FILED
2011 Mar-30 PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **DONNA H. SIMMONS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 3:10-CV-247-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF** } | |
| **SOCIAL SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Donna Simmons brings this action pursuant to Section 405 of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Social Security Disability Insurance benefits. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Facts**

This action arises from Plaintiff's application for disability insurance benefits, filed protectively on January 3, 2007, which alleges disability beginning January 1, 1989. (Tr. 45). Plaintiff's claim was initially denied on March 16, 2007. (Tr. 45). Plaintiff subsequently requested and received a hearing before Administrative Law Judge Patrick R. Digby on July 25, 2008 in Florence, Alabama. (Tr. 45, 71). Prior to the hearing, Plaintiff's counsel requested that the administrative law judge ("ALJ") amend Plaintiff's alleged onset date of disability to March 22, 2006. (Tr. 144-45). In his decision, dated August 13, 2008, the ALJ determined that Plaintiff

was not eligible for disability benefits since she had not been under a disability, as defined in the Social Security Act ("Act"), from March 22, 2006, to August 13, 2008. (Tr. 53-54).  On December 18, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review.

At the time of the hearing before the ALJ, Plaintiff was a forty-nine year old high school graduate who did not receive any additional education after high school. (Tr. 13, 14).  Plaintiff has previously worked as a mail room clerk, a motel housekeeper/cleaner, and a child care worker. (Tr. 31-32, 114-17).  Plaintiff alleged pain problems related to arthritis, depression, fibromyalgia, high blood pressure, Irritable Bowel Syndrome ("IBS"), migraines, and back, neck, hand, and joint pain. (Tr. 98).  Plaintiff's medical records indicate that in 1988 she slipped and herniated a disc which required surgery for a discectomy. (Tr. 311).  Since that time, Plaintiff has had ongoing problems with back pain. (Tr. 311).  In April 2006, an MRI was done of her lumbar spine that showed some mild degenerative changes at L5-S1, but was otherwise normal. (Tr. 235).  Plaintiff complains of constant lumbar pain that she considers severe. (Tr. 311). Plaintiff has also experienced problems with carpel tunnel and had releases performed on both arms in 2007. (Tr. 421-32).  After the releases were performed, Plaintiff reported that the release that was performed on her left side had gone well and the doctor only found some dysesthesias over the index and long finger after surgery on the right side. (Tr. 421).  Plaintiff failed to show up for a second follow up after the surgery on her right side. (Tr. 421).  The medical records also indicate that Plaintiff suffers from IBS with diarrhea. (Tr. 242, 257, 273, 351, 433, and 437). During visits in both November 2007 and January 2008, Plaintiff's physician

stated that Plaintiff needed a colonoscopy. (Tr. 430, 433). However, Plaintiff did not attend her appointment where the colonoscopy was scheduled to be performed. (Tr. 27).

During the disability application process, Plaintiff was seen by Dr. Gill, a consultative physician. (Tr. 311-13). His report notes Plaintiff's past history with back, neck, and hand problems. (Tr. 311). Dr. Gill did not find any tenderness in Plaintiff's back or neck, but did note that she complained of pain with movement. (Tr. 312). With respect to Plaintiff's arms, he found that she used them well with no limitations and demonstrated good range of motion in the joints. (Tr. 312). He noted Plaintiff's history with IBS in the section titled "Past Medical History," but there is no other discussion of Plaintiff's problems with IBS in his consultative report. (Tr. 311-14). Dr. Gill did not recommend any limitations on Plaintiff's ability to work. (Tr. 311-13). Plaintiff also saw Dr. Wood for a mental examination. (Tr. 315-18). Plaintiff was diagnosed with Major Depressive Disorder, recurrent and mild in partial remission and Panic Disorder without Agoraphobia, which was nocturnal and in partial remission. (Tr. 318). Dr. Wood found that Plaintiff's mood symptoms do affect her, but do not preclude her ability to understand, recall, follow instructions, or work for two continuous hours. (Tr. 317).

During the hearing Plaintiff testified that she left her previous job as a mail room clerk because standing in one position would cause her back to hurt and she was having problems with diarrhea caused by her IBS. (Tr. 14, 27). Plaintiff also testified that the repetitive motion of sorting the mail would cause her fingers to tingle and arms to fall asleep. (Tr. 15). She stated that the surgery she had on both of her arms was "not really" successful because she still experiences numbness. (Tr. 17). Plaintiff testified that she was unable to sit for a prolonged period of time because her feet and legs begin to swell. (Tr. 17). Plaintiff further testified that she experiences

a tingling sensation and numbness in her hands and fingers, which causes her to drop things when she reaches out in front of her body and moves her fingers for longer than ten minutes. (Tr. 18). She testified that she was able to sit comfortably for 25-30 minutes before having spasms in her lower back that shoot down the back sides of her legs. (Tr. 19). Plaintiff further testified that she could stand still for 15 minutes at a time before her back, feet, and legs begin to swell. (Tr. 19). Plaintiff also testified that her IBS caused her to experience diarrhea with cramping that at times resulted in Plaintiff soiling her pants. (Tr. 20). She reported that she had good days and bad days and on a bad day has had to use the bathroom 12 times in one day. (Tr. 21). Plaintiff testified that she on average had seven "bad days" in a month. (Tr. 21). Plaintiff also testified that she had arthritis in her feet that caused her joints to swell and go numb; she reported that she has to lay with her feet elevated to get the swelling to go down. (Tr. 22). Plaintiff also reported mental health problems and problems sleeping, but noted that she had not seen a psychiatrist or psychologist in a while. (Tr. 23, 26).

With respect to daily activities Plaintiff reported spending most of her time in the bathroom or in bed and noted that she was unable to help with chores around the house with the exception of folding clothes. (Tr. 25). She also reported that because of her medications the most she drove was to her daughter's house, which is about half a block away from her home. (Tr. 25).

In addition to Plaintiff's testimony, the ALJ also heard testimony from Patsy Bramlett, a vocational expert. (Tr. 31-38). During the hearing the ALJ posed the following hypothetical individual to the vocational expert:

> I'd like you to assume a hypothetical individual with the age and education, prior work history and training of the Claimant. The hypothetical individual can

> perform light work as defined by the Social Security Administration. The hypothetical individual would need a sit-stand option at job at will, has no limitations in ability to push and pull, including operation of foot and hand controls. The hypothetical individual can occasionally, and by occasionally I mean up to two thirds of the day, climb ramps and stairs, stoop, crouch, however -- I'll put that stoop, crouch and kneel to occasionally, balance to occasionally, climbing ramps and stairs to occasionally. The hypothetical individual should not work on ladders, ropes, or scaffolds for safety reasons. The hypothetical individual would have, would be limited in ability, in manipulative limitations. And manipulative limitations when reaching in all directions, including overhead, would be limited to frequently. Handling or gross manipulation would be limited to frequently. Any fine finger manipulation would be limited to frequently. There's no visual limitation. The hypothetical individual should avoid extreme cold and heat, wetness and humidity, vibrations. The hypothetical individual should not work around dangerous machinery or unprotected heights. That would be for safety reasons.
>
> * * *
>
> Ms. Bramlett, I also want you to assume the following non-exertional or emotional problems. Claimant, or the hypothetical individual, would be able to understand, remember short simply instructions but no detailed, no detailed tasks. The hypothetical individual would be able to sustain attention and concentration for two-hour periods across an eight-hour workday with customary breaks. The hypothetical individual would work best in well-spaced areas. Any contact with the public should be infrequent and casual. Supervision should be non-intensive and non-threatening. Changes in the workplace should be infrequent and well explained.

(Tr. 32-34). The vocational expert testified that the hypothetical individual referred to by the ALJ would not be able to perform the prior work performed by Plaintiff, but would be able to perform other jobs in the regional or national economy. (Tr. 34). Specifically, the vocational expert testified that Plaintiff would be able to perform the jobs of an inspector or a tester. (Tr. 34). When the hypothetical was further modified such that the hypothetical individual would need to be able to have access to the restroom every two hours during the workday and would need to be able to perform with an incontinence pad, the vocational expert testified that those same jobs would still be available. (Tr. 34).

When Plaintiff's counsel questioned the vocational expert, he presented a slightly different hypothetical individual. Plaintiff's presented the following hypothetical individual:

> [P]lease assume someone of [Plaintiff's] age, education, and past work experience. Please assume that such an individual could use their hands for manipulations and reaching in front of them for only 10 minutes at a time and then would have to take at least a 15-20 minute break. Please assume that such a person can sit for approximately 30 minutes at a time and then would need to, to stand for a period of time but could only stand for 15 minutes at a time. Please assume that individual would have to have access to a bathroom on an unscheduled basis, as many as 12 times during that eight-hour work period, that lifting would be restricted to the weight of a gallon of milk, which I believe is about eight pounds, that such individual would suffer from deficits in concentration and cognitive abilities due to sleep deprivation and the side effects of medication, as well as pain.

(Tr. 36-37). When presented with Plaintiff's hypothetical individual, the vocational expert testified that the limited use of the hands and the requirement of unscheduled breaks would rule out both past work and other work. (Tr. 37).

## II.   Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ's findings regarding Plaintiff's pain testimony are not supported by substantial evidence. (Doc. # 10, at 4-12).

## III.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citation omitted)). If supported by substantial

evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

IV.   Discussion

    A.   The ALJ's Decision

The ALJ addressed whether Plaintiff was disabled under sections 216(i) and 223(d) of the Act.[1] The ALJ correctly noted that "[d]isability is defined as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or expected to last for a continuous period of not less than 12 months." (Tr. 45). Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the claimant engages in gainful work activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that

---

[1] The ALJ also determined that Plaintiff met the insured status requirements of the Act through December 31, 2007. (Tr. 47). Plaintiff argues that Plaintiff has sufficient earnings to remain insured through December 31, 2011. Because the ALJ determined that Plaintiff met the insured status requirements at the time of his decision, this court need not determine whether Plaintiff was insured through 2011 as opposed to 2007.

significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the instant case, the ALJ determined that: (1) Plaintiff did not engage in substantial gainful activity during the time of the alleged disability; (2) Plaintiff has the following severe combination of impairments that more than minimally affect her ability to perform work-related activities: degenerative disc disease, IBS, a history of bilateral carpel tunnel releases, anxiety,

depression, and obesity; and (3) Plaintiff does not have and impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 47).

This last finding required the ALJ to continue to steps four and five of the evaluation process. During the final two steps of the process the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with a sit/stand option at will. (Tr. 48). The ALJ provided the further limitations that Plaintiff should not use ladders, ropes or scaffolding, nor work around dangerous machinery or at unprotected heights. (Tr. 48). Additionally, Plaintiff would be limited in manipulative movements with reaching in all directions, handling or gross manipulation, and fine fingering manipulations limited to frequently. Finally, the ALJ found that Plaintiff should avoid areas of wetness, humidity, and areas with vibrations; would work best in a well spaced environment; should have infrequent and casual contact with the public; should have supervision that is non-intensive and non-threatening; and that changes in the workplace should be infrequent and well explained. (Tr. 48). In making his findings concerning Plaintiff's RFC, the ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p. (Tr. 48). After reviewing Plaintiff's testimony and medical records, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC.

After determining Plaintiff's RFC, the ALJ, using the testimony provided by the vocational expert, determined that Plaintiff was unable to perform her past relevant work. However, at step five he concluded that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 53). The ALJ therefore concluded that Plaintiff was not disabled as defined by the Act and thus, was not entitled to a period of disability insurance benefits. (Tr. 53).

Plaintiff challenges whether the ALJ's decision to reject portions of Plaintiff's testimony was supported by substantial evidence.

### B.  The ALJ's Decision to Discredit Plaintiff's Testimony was Supported by Substantial Evidence

The Eleventh Circuit has established a three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to give rise to the alleged pain.

*Id*. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Id.* at 1561. Thus, if a claimant testifies to disabling pain and satisfies the three-part pain standard, she much be found disabled unless that testimony is properly discredited. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* at 1561-62. Further, the reasons given for discrediting

pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In this case the ALJ correctly applied the pain standard and found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 49). The ALJ specifically articulated his rationale for discrediting the "intensity, persistence, and limiting effects" of Plaintiff's symptoms. (Tr. 49-52). In doing so, the ALJ fulfilled the Eleventh Circuit's requirement that the trier of fact articulate explicit reasons for discrediting a claimant's testimony. Thus, the question before this court is whether the reasons articulated by the ALJ were supported by substantial evidence.

The ALJ discredited several elements of Plaintiff's testimony that affected his findings concerning her RFC. The ALJ specifically noted the following inconsistencies between the record and Plaintiff's testimony: (1) the fact that in February 2007 Plaintiff reported needing assistance with her personal needs, yet in March 2007 Plaintiff reported she was able to take care of her own needs; (2) the lack of medical evidence showing that Plaintiff's obesity has impacted her musculoskeletal system or general health; (3) the lack of evidence showing that Plaintiff's problems with fibromyalgia, arthraligias, myalgias, neuropathy, and degenerative arthritis had resulted in significant functional limitations;[2] (4) with respect to Plaintiff's carpal tunnel

---

[2] Although he noted that the record only indicates conservative treatment with medication for this condition and that there was a lack of evidence to support significant functional limitations based on these allegedly disabling conditions, the ALJ still gave considerations to these impairments in his findings concerning Plaintiff RFC. (Tr. 50).

syndrome, the fact that the medical records indicate that subsequent to her carpal tunnel releases (performed in April and June 2007) she reported that her left side was doing well and there was only some dysesthesias noted over the index and long finger, that Plaintiff failed to attend an August 2007 follow-up appointment, and that no additional evidence was found in the medical records to indicate that Plaintiff continued to have problems with her carpal tunnel syndrome;[3] (5) with respect to Plaintiff's IBS, the lack of support for the alleged severity of the symptoms as reported by Plaintiff, specifically the facts that her treating physician strongly recommended a colonoscopy and set up an appointment for the procedure, yet Plaintiff failed to attend and that she did not report the frequency of her trips to the bathroom to her doctors; (6) with respect to Plaintiff's degenerative disc disease, that the records showed that she had been doing fine until she slipped and twisted her back in July 2006, and, in any event, since that time she has been treated conservatively and reported in November 2007 that her back still bothered her, but was tolerable and, further, that there was no evidence in the record to support the contention by Plaintiff that she needed to elevate her legs;[4] (7) with respect to Plaintiff's depression and anxiety, the fact that she had not sought treatment from a mental health source and that the medical record did not support the limitations reported by Plaintiff;[5] and (8) the fact that the

---

[3] Nevertheless, the ALJ still gave some consideration to Plaintiff's carpal tunnel syndrome in the RFC. (Tr. 50).

[4] Limitations caused by Plaintiff's degenerative disc disease were accounted for in the ALJ's RFC. (Tr. 50-51).

[5] On March 13, 2007, Dr. Wood performed a consultative psychological evaluation and diagnosed Plaintiff with a mild recurrent major depressive disorder in partial remission and panic disorder without agoraphobia . (Tr. 315-18). The ALJ gave considerable weight to Dr. Wood's opinion that Plaintiff would have no more than moderate limitations in her mental functioning and expressed such limitations in her RFC. (Tr. 51).

medical records indicate that Plaintiff claimed back pain was the reason she quit her last job, yet now alleges that it is diarrhea that keeps her from working.[6] (Tr. 50-52).

Plaintiff attacks several of the reasons supplied by the ALJ for discrediting her testimony.[7] Plaintiff points out that it is conceivable that she failed to report the fact that she needed help with her personal needs to Dr. Gill because she was embarrassed. However, the fact remains that in March 2007 Plaintiff reported that she did not need help with her personal needs. As such, it was proper for the ALJ to consider the discrepancies in Plaintiff's self-reported limitations in her ability to take care of her personal needs.

Plaintiff further points out that the fact that she failed to have a colonoscopy is not substantial because a colonoscopy is not treatment, it is a diagnostic tool and she had already been diagnosed with IBS. However, the records clearly show that while Plaintiff's treating physician recommended she receive a colonoscopy, Plaintiff chose not to have the procedure done. (Tr. 430, 433). In fact, Plaintiff's physician noted on November 6, 2007, that Plaintiff

---

[6] The ALJ's opinion states that Plaintiff did not report her IBS to Dr. Gill during his consultative evaluation, yet Dr. Gill's report notes that Plaintiff has a past medical history with IBS. (Tr. 312). However, this does not undermine the ALJ's main point that the record as a whole indicates that Plaintiff initially stated the reason for quitting her last job was back pain, yet in the hearing Plaintiff indicated the reason she is unable to work is diarrhea. *Compare* (Tr. 120) (stating that the reason she could no longer work for Alabama Mail was because she could not lift, stand, or pick up small things) *with* (Tr. 16) (stating that there was nothing she could do because she was going to the bathroom all the time).

[7] The court notes that Plaintiff does not contest the sufficiency of the evidence related to the ALJ's findings concerning the lack of evidence showing limitations based on her obesity, the lack of evidence of limitations caused by her fibromyalgia, arthraligias, myalgias, neuropathy, and degenerative arthritis, the lack of evidence to support her alleged limitations stemming from her carpel tunnel syndrome, and the fact that her initial documents seem to indicate that she stopped working because of back pain and at the hearing stated her reason for quitting work was diarrhea caused by IBS.

needed the colonoscopy to confirm his suspicions that it was IBS. (Tr. 433). Regardless of whether the procedure was for diagnosis or treatment purposes it was still a procedure recommended by Plaintiff's physician that Plaintiff elected not to have done. It is proper for the ALJ to consider whether Plaintiff undertook procedures recommended by her treating physician.

Additionally, Plaintiff argues that the fact that she did not report the frequency of her diarrhea to her physician is not evidence. However, Plaintiff testified that she was using the restroom upwards of 12 times per day and was having accidents a couple of times per week. Plaintiff asserts that diarrhea is a common symptom of IBS, and, therefore, whether Plaintiff discussed the precise frequency of her bowel movements with her doctors is not dispositive. While it is true that the record contains evidence of Plaintiff's complaints of diarrhea, the record does not reflect that Plaintiff's diarrhea was of such severity that, on average, she would experience seven days a month were she would have 12 or more bouts of diarrhea in a day. If Plaintiff experienced diarrhea of such severity, it was reasonable for the ALJ to expect that fact to be reflected in the medical records. As such, it was appropriate for the ALJ to consider the lack of documentation concerning the frequency of Plaintiff's diarrhea in making his credibility determination.

Plaintiff also argues that it was improper for the ALJ to discredit her testimony concerning her need to elevate her legs, because she never testified that her doctor told her to elevate her legs. Plaintiff appears to confuse those two different points. The ALJ was simply stating that the elevation of Plaintiff's legs was not a functional limitation supported by the record. This is seemingly conceded by Plaintiff in her brief when she states, "Ms. Simmons did not testify that anyone, doctor or otherwise, told her to elevate her legs." (Doc. # 10 at 10).

Plaintiff further states that it was not appropriate for the ALJ to reject her pain testimony based on the fact that she did not seek treatment for her depression and anxiety from a psychiatrist or psychologist.  However, Plaintiff's argument again misses the mark.  The ALJ did not find, state, or even imply, that Plaintiff was not depressed; rather, he found that Plaintiff's mental health issues were not as limiting as her testimony reflected.  The ALJ relied heavily on the findings of Dr. Wood, the consulting psychologist, and included limitations in his RFC assessment that reflect Dr. Wood's findings. Plaintiff argues that the fact that she did not seek formal mental health treatment does not constitute substantial evidence for rejecting pain testimony in light of the fact that her physical impairments are the primary reason that she is unable to work. (Doc. # 10 at 13).  The argument that Plaintiff's mental issues are not the primary reason for her inability to work bolsters the ALJ's decision to discount Plaintiff's testimony concerning her depression and anxiety to the extent that it differed from Dr. Wood's findings concerning her limitations.

Finally, Plaintiff contests the remark by the ALJ pointing out that she applied for disability about the time that her husband retired from his job.  Plaintiff contends that the ALJ was speculating that Plaintiff was applying for disability so she could be home with her husband.  The Commissioner contends that the ALJ was simply making an observation about the timing of Plaintiff's benefits applications.  This court need not address the reason for the ALJ's statement, because it concludes that substantial evidence supports the ALJ's decision to otherwise discredit Plaintiff's testimony.

The court recognizes that credibility determinations are within the province of the ALJ. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984).  A reviewing court will not disturb a

15

clearly articulated credibility finding where there is substantial evidence in the record to support the finding. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Even if there is evidence in the record that preponderates against the findings of the ALJ, his factual findings must be affirmed so long as there is substantial evidence to support those findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Substantial evidence is such evidence that a reasonable person would accept as adequate to support a conclusion. *Phillips v. Barnhart*, 357 F.3d 1232 n.8 (11th Cir. 2004). The ALJ's reasons for discrediting Plaintiff's testimony of disabling pain were both clearly articulated and supported by substantial evidence. The numerous inconsistencies between the record and Plaintiff's testimony discussed above provide the substantial evidence needed to discredit Plaintiff's subjective pain testimony. After a careful review of the record, the court concludes that the ALJ properly discounted Plaintiff's testimony to the extent it is inconsistent with the RFC assessment.

Because the ALJ properly discredited Plaintiff's testimony when determining her RFC, the RFC provided to the vocational expert was appropriate. As such, the ALJ properly determined that there are jobs that exist in the national economy that Plaintiff can perform.

**V.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this \_\_\_\_30th\_\_\_\_ day of March, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE